IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF FOUR APPLE IPHONES AS FURTHER DESCRIBED IN ATTACHMENT A | Case No. _5:24-MJ-53_ **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael Torbic, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a warrant to search the following digital devices described herein and in Attachment A, for things described in Attachment B:

a.  one Apple iPhone with white back cover seized from the cupholder of a black Jeep Grand Cherokee operated by LEROY TOLBERT III ("TOLBERT") at the time of his arrest on June 26, 2024, and currently located in Federal Bureau of Investigation ("FBI") evidence in Wheeling, WV ("Subject Phone 1");

b.  one Apple iPhone with silver back cover seized from the cupholder of a black Jeep Grand Cherokee operated by TOLBERT at the time of his arrest on June 26, 2024, and currently located in FBI evidence in Wheeling, WV ("Subject Phone 2");

c.  one Apple iPhone in a clear case seized from the person of KAYLAH CADWELL ("CADWELL") at the time of her arrest on June 26, 2024, and currently located in FBI evidence in Wheeling, WV ("Subject Phone 3"); and

d.  one Apple iPhone, black in color, seized from the cupholder of a gray Chevrolet Malibu operated by BRIDGETTE COCHRAN II ("COCHRAN") at the time of her

arrest on June 26, 2024, and currently located in FBI evidence in Wheeling, WV ("Subject Phone 4").

2.      I am a Special Agent with the FBI and have been since January 2016. Prior to becoming a Special Agent with the FBI, as a Certified Public Accountant ("CPA"), I had been employed as a Financial Analyst and Auditor.  Since joining the FBI in January of 2016, I have received training in the investigation of violations of criminal law, such as public corruption, fraud against the government, money laundering, and financial crimes, including several hundred hours of formal training at the FBI Training Academy in Quantico, Virginia. During the time that I have been employed by the FBI, I have conducted and participated in numerous investigations relating to the corruption of public officials, bribery, money laundering, and major frauds against the United States. I have participated in many aspects of criminal investigations including the issuance of subpoenas, seizing and reviewing evidence, conducting physical and electronic surveillance, working with informants, and the execution of search and arrest warrants. I have interviewed and/or debriefed defendants, informants, and other witnesses who had personal knowledge regarding the investigations in which I have been involved. I have also served as an affiant for affidavits in support of criminal complaints, search warrants, seizure warrants, and arrest warrants.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that TOLBERT, CADWELL, and COCHRAN have violated Title 18 United States Code ("U.S.C.") Section 1349 (conspiracy to commit bank fraud), and that TOLBERT has also violated Title 18 U.S.C. Sections 1343 (wire fraud), 1344 (bank fraud), and 1028 (identity theft) (collectively, the "subject offenses").  There is probable cause to believe that evidence, instrumentalities, contraband, and fruits of these crimes, further described in Attachment B, will be located in the property to be searched, as described in Attachment A.

## SUMMARY OF PROBABLE CAUSE

5.      On November 3, 2023, an individual believed to be TOLBERT, opened a Synchrony Bank Lowe's credit account at the Lowe's store located at 2801 Chapline Street, Wheeling, WV 26003.  TOLBERT opened the credit account in the name of Sunesis Trucking Company Inc., a company that TOLBERT had no association with.  TOLBERT then used the fraudulently opened account to purchase $6,358.41 of merchandise from the Wheeling Lowe's store.  As described in greater detail below, records and surveillance video indicate that TOLBERT conducted additional fraudulent transactions at Lowe's stores in West Virginia and surrounding states totaling approximately $100,000.

## PROBABLE CAUSE

6.      Surveillance video from Lowe's and records from Synchrony Bank, were able to link TOLBERT and others to at least 45 fraudulent transactions conducted at multiple Lowe's locations.  Based on my conversations with Synchrony Bank employees, I know that Synchrony Bank has an agreement with Lowe's to operate Lowe's consumer and commercial credit accounts. Synchrony Bank owns the Lowe's credit accounts and offers Personal Revolving Credit ("PRC"), Business Revolving Credit ("BRC"), and Lowe's Accounts Receivable ("LAR") accounts for

3

Lowe's customers.  The PRC and BRC accounts require a personal guarantor, which requires obtaining a social security number ("SSN") for the authorized user in order to run a credit check. The LAR account does not require a personal guarantor, so an SSN is not required for authorized users on the account.

7.     As was the case with TOLBERT, all three types of Lowe's credit accounts can be established at a Lowe's store.  The Lowe's associate will input the required information into a tablet computer at the store, and Synchrony Bank will process the application and issue credit, typically on the same day, if approved.  The Synchrony Bank employees informed me that it was more difficult to detect fraud when the account was opened at a Lowe's store, as they were relying on the Lowe's employee to verify the individual's identity and association to the stated business, if applicable.  Credit cards on newly established accounts are typically shipped within five to seven days, but purchases can be made immediately on the account using temporary codes that can be obtained from Synchrony Bank.

8.     The majority of the fraudulent transactions conducted by TOLBERT were associated with LAR accounts.  However, on October 17, 2023, TOLBERT did establish a BRC account in the name of Steels Electric.  The SSN provided by TOLBERT did not match his actual SSN, but TOLBERT did provide his actual date of birth and address.  Additionally, the surveillance footage from these fraudulent transactions matched the photograph of TOLBERT on his Michigan Driver's License and images of TOLBERT that had been posted to social media.

**November 3, 2023 – Wheeling, WV Transaction**

9.      A review of Lowe's surveillance video showed that at approximately 6:47 am on November 3, 2023, TOLBERT arrived at the Lowe's store located at 2801 Chapline Street, Wheeling, WV 26003.  TOLBERT was driving a white Chrysler Pacifica minivan that, according to Hertz records, had been rented by CADWELL in Farmington Hills, MI on October 30, 2023.

10.      According to Synchrony Bank records, at approximately 7:04 am on November 3, 2023, a LAR account application in the name of Sunesis Trucking Compnay Inc. was submitted and approved at the Lowe's store located at 2801 Chapline Street, Wheeling, WV 26003.  James Hood was listed as the Principal and only authorized user on the account.  A Lowe's receipt, showed that at approximately 7:11 am, this newly opened account was used to make a $6,358.41 purchase that was to be picked up later that day.  TOLBERT is observed on surveillance video exiting the Lowe's store at approximately 7:13 am.

11.      According to U-Haul records, at approximately 4:41 pm on November 3, 2023, RATLIFF presented his Michigan Driver's License and rented a 26' Moving Van from Attention to Detail, located at 10 S Broadway Street, Wheeling, WV 26003.  An employee at Attention to Detail informed me that RATLIFF had paid a $100 cash deposit for the vehicle, which he was to return to the same location.  After RATLIFF failed to return the vehicle, Attention to Detail reported the vehicle stolen.  The vehicle was subsequently located at a U-Haul store in Cleveland, OH on November 7, 2023.

12.      At approximately 4:55 pm on November 3, 2023, TOLBERT was observed on Lowe's surveillance video returning to the Wheeling Lowe's driving the 26' Moving Van.  TOLBERT was then observed interacting with several Lowe's associates and pointed to the location of the 26' Moving Van before walking into the parking lot at approximately 5:01 pm.

Lowe's associates were then seen loading the previously purchased merchandise into the back of the U-Haul Moving Van.  At approximately 5:33 pm, the Chrysler Pacifica minivan pulled alongside the U-Haul moving van.  TOLBERT appeared to exit the passenger side of the minivan, enter the U-Haul, and drive away.

13.     According to a Lowe's receipt, the following day on November 4, 2023, at approximately 3:10 pm, TOLBERT made another fraudulent transaction of $5,073.56 to the Sunesis Trucking Company Inc. account.  This transaction was made at the Lowe's located 24500 Miles Road, Bedford Heights, OH 44146, and TOLBERT was observed on surveillance video conducting the transaction.  TOLBERT was observed driving the Chrysler Pacifica minivan on November 4, 2023, and was again observed driving the U-Haul Moving Van to pick up the merchandise on November 6, 2023.

**Additional Accounts and Transactions**

14.     According to Synchrony Bank records, TOLBERT, CADWELL, COCHRAN, RATLIFF and potentially others opened 22 LAR accounts and one BRC account between September 27 and November 27, 2023, as detailed in the following table.

| Date Opened | Business Name | Type | Authorized User |
|---|---|---|---|
| 9/27/2023 | Kelly Fuels Inc. | LAR | Tolbert, Leroy |
| 9/28/2023 | Deliverance Outreach Ministry | LAR | Tolbert, Leroy |
| 9/29/2023 | Fuel Detroit LLC | LAR | Tolbert, Leroy |
| 9/30/2023 | Regency Medical Group PLLX | LAR | Tolbert, Leroy |
| 10/2/2023 | Glass Academy LLC | LAR | Tolbert, Leroy |
| 10/4/2023 | Ifly Hospitality LLC | LAR | Tolbert, Leroy |
| 10/5/2023 | Management 12 LLC | LAR | Cochran, Bridgette |
| 10/5/2023 | Glass 413 Inc. | LAR | Cochran, Bridgette |
| 10/6/2023 | Plastic Failure Labs Inc. | LAR | Ratliff, Lonnie |
| 10/9/2023 | Glass Bottle Inc. | LAR | Carey, Autumn |
| 10/17/2023 | Steels Electric Inc. | BRC | Tolbert, Leroy |
| 10/17/2023 | Steel Industries Inc. | LAR | Talbert, Leray |
| 10/18/2023 | Steelgrip Samm | LAR | Ratliff, Lonnie |

| | | | |
|---|---|---|---|
| 10/22/2023 | Sesler Investment Services | LAR | Cadwell, Kaylah |
| 10/27/2023 | Warren Sheet Metal Inc. | LAR | Jones, Roderick |
| 11/1/2023 | Keylogic System LLC | LAR | Wilcox, Donald |
| 11/3/2023 | Sunesis Trucking Company Inc. | LAR | Hood, James |
| 11/6/2023 | Technologyxperts Inc. | LAR | Lublin, Patrick |
| 11/11/2023 | Gregory Trucking Inc. | LAR | Gregory, John |
| 11/14/2023 | Bowling Transportation Inc. | LAR | Bowling, Bill |
| 11/16/2023 | Fit Technologies LLC | LAR | Ratliff, Lonnie |
| 11/22/2023 | CHR Corp | LAR | Tolvert, Leeroy |
| 11/27/2023 | One Click Technology LLC | LAR | Bernard, Matt |

15.     According to Synchrony Bank and Lowe's records, between September 27 and November 27, 2023, these same individuals conducted at least 45 transactions on these accounts at multiple Lowe's stores, totaling at least $100,002.26, as detailed in the table below.

| Transaction Date | Business Name | Amount |
|---|---|---|
| 9/27/2023 | Kelly Fuels Inc. | $4,692.74 |
| 9/28/2023 | Kelly Fuels Inc. | $2,524.58 |
| 9/29/2023 | Fuel Detroit LLC | $4,289.24 |
| 9/30/2023 | Regency Medical Group PLLX | $2,220.70 |
| 9/30/2023 | Regency Medical Group PLLX | $3,132.05 |
| 9/30/2023 | Kelly Fuels Inc. | $45.25 |
| 9/30/2023 | Kelly Fuels Inc. | $60.36 |
| 9/30/2023 | Fuel Detroit LLC | $714.42 |
| 10/1/2023 | Regency Medical Group PLLX | $1,614.43 |
| 10/1/2023 | Regency Medical Group PLLX | $701.83 |
| 10/2/2023 | Glass Academy LLC | $1,538.40 |
| 10/3/2023 | Kelly Fuels Inc. | $251.74 |
| 10/5/2023 | Glass 413 Inc. | $10,925.21 |
| 10/6/2023 | Plastic Failure Labs Inc. | $2,119.36 |
| 10/8/2023 | Kelly Fuels Inc. | $2.38 |
| 10/17/2023 | Steels Electric Inc. | $1,000.00 |
| 10/17/2023 | Steels Electric Inc. | $1,000.00 |
| 10/17/2023 | Steels Electric Inc. | $500.00 |
| 10/17/2023 | Steels Electric Inc. | $500.00 |
| 10/17/2023 | Steels Electric Inc. | $500.00 |
| 10/17/2023 | Steels Electric Inc. | $500.00 |

7

| | | |
|---|---|---|
| 10/17/2023 | Steels Electric Inc. | $500.00 |
| 10/17/2023 | Steels Electric Inc. | $500.00 |
| 10/17/2023 | Steels Electric Inc. | $500.00 |
| 10/17/2023 | Steel Industries Inc. | $1,000.00 |
| 10/22/2023 | Sesler Investment Services | $2,385.55 |
| 10/22/2023 | CHR Corp | $500.00 |
| 10/22/2023 | CHR Corp | $500.00 |
| 10/27/2023 | Warren Sheet Metal Inc. | $331.31 |
| 10/27/2023 | Warren Sheet Metal Inc. | $4,213.92 |
| 10/28/2023 | Warren Sheet Metal Inc. | $1,895.54 |
| 10/28/2023 | Warren Sheet Metal Inc. | $280.95 |
| 10/28/2023 | Warren Sheet Metal Inc. | $2,842.44 |
| 11/1/2023 | Keylogic System LLC | $4,994.09 |
| 11/3/2023 | Sunesis Trucking Company Inc. | $6,358.41 |
| 11/4/2023 | Sunesis Trucking Company Inc. | $5,073.56 |
| 11/6/2023 | Technologyxperts Inc. | $4,448.84 |
| 11/11/2023 | Gregory Trucking Inc. | $5,907.18 |
| 11/14/2023 | Bowling Transportation Inc. | $(2,599.22) |
| 11/14/2023 | Bowling Transportation Inc. | $(568.53) |
| 11/14/2023 | Bowling Transportation Inc. | $540.11 |
| 11/14/2023 | Bowling Transportation Inc. | $2,556.89 |
| 11/14/2023 | Bowling Transportation Inc. | $9,940.37 |
| 11/27/2023 | One Click Technology LLC | $(96.53) |
| 11/27/2023 | One Click Technology LLC | $9,164.69 |
| | **Total** | **$100,002.26** |

**Use of the Subject Phones**

16.     A review of records obtained in this investigation, including prior search warrants issued by this court (24-MJ-14, 24-MJ-15, 24-MJ-16, 24-MJ-29, and 24-MJ-32), has tied various phone numbers used by TOLBERT, CADWELL, and COCHRAN to the fraudulently opened accounts and transactions listed above.  A review of the telephone data obtained in this case

indicates that TOLBERT,[1] CADWELL and COCHRAN each had a cellular phone that they used regularly for a period of several months to several years. Location data for these cellular phones, shows the devices travelling with TOLBERT, CADWELL and COCHRAN to these various Lowe's locations at the times they are conducting the fraudulent transactions detailed above. The additional phone numbers tied to these transactions appears to be burner phones used by TOLBERT that contained fictitious subscriber information and were only active for a short period of time. Additionally, toll records for their regular cell phones and TOLBERT's burner phones shows that there was regular communication between CADWELL and TOLBERT, and between COCHRAN and TOLBERT during the period these fraudulent transactions were conducted.

17.     Based on my training and experience in investigations such as this, there will likely be evidence of the fraudulent transactions on the Subject Phones. Unlike the burner phones that were utilized for a brief period of time and subsequently discarded, the Subject Phones that were located in the vehicles of and on the persons of TOLBERT, CADWELL and COCHRAN at the time of their arrest are likely to have been subscribed to and used for a much longer duration. As such, I believe the Subject Phones will contain evidence of the subject offenses, including information regarding others involved, the original source of the information used to open these fraudulent accounts, evidence of other stolen identities utilized, and the disposition of the fraudulently purchased merchandise.

---

[1] Verizon subscriber information for TOLBERT's regular telephone number, 248-303-9427, lists CADWELL as the subscriber but surveillance video, toll records, and location data identify TOLBERT as the actual user of the device.

## **TRAINING AND EXPERIENCE ON DIGITAL DEVICES**

18.     As used herein, the term "digital device" includes the property to be searched, as described in Attachment A.

19.     Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.   Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.   Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

10

c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

20.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.   Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

21.   Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

11

## **CONCLUSION**

22.     I submit that this affidavit supports probable cause for a warrant to search the property described in Attachment A and seize the items described in Attachment B.

Respectfully submitted,

Michael Torbic
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on July _19_, 2024.

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

12